Good morning ladies and gentlemen. Our first case for this morning will be Six Star Holdings and Farrell against the City of Milwaukee. Mr. Stephens. Good morning, Your Honors. Adam Stephens appears on behalf of the City of Milwaukee. May it please the Court. In this case, standing was stretched too far. There were two plaintiffs involved in this case, one of which Farrell, LLC. There was a decision by the District Court, and it is the City's position that Plaintiff Farrell, LLC did not have standing to challenge two repealed licensing ordinances and thereafter seek lost profit compensatory damages from the City of Milwaukee because Farrell, LLC never applied for either license or had the license ordinances applied against it. Does the jury's verdict tell us anything about whether they suffered an injury? Well, it is, this appeal is about standing, Your Honor, and the, it should have never gone to the jury at that point. The District Court erred in issuing its summary judgment. Do you think Farrell could establish standing by demonstrating that applying for a theater public entertainment club license would have been futile? Does the fact that the city failed to act on Six Star, on its application, establish that Farrell's likewise, you know, would have been set aside or denied? How do you feel about that? I don't think, Your Honor, because of the unique circumstances of this case, and I think procedurally, the posture of litigation throughout this case was significantly different. I think the situation with Six Star's application for the theater license was made some months after the Common Council of the City of Milwaukee had announced that they were planning on repealing those ordinances, and then the application was made. There are issues in the record that were before the District Court, now obviously before this court, where, for example, there was another licensed premise by the name of Rusty's that went in the exact same location that Six Star was applying for in a theater license, and therefore, in addition to the repeal of the ordinance, in addition to the fact that there was already an established license premise that had very recently, before the application of Six Star was made, was in existence, I think that it would not show necessarily that the Farrell's application would have been futile. But was any evidence submitted at trial that the city had decided not to enforce the ordinances during, you know, the time frame that you were just discussing, you know? No, there was no evidence. In the ordinance under repeal? No. No, that was not a matter of discussion at trial, as I recall, Your Honor, but the time frame here was relatively quick, meaning in July of 2011, the city introduced the file to repeal the ordinances. The application by Six Star was made the following September. The Common Council voted to actually repeal the ordinance on November 2, 2011, which is the day that Six Star and Farrell filed for the fourth amended complaint, and then the repeal itself was made effective in March 2012 in order to accommodate the clerical and administrative burden of transforming hundreds of licenses into one. I just want to ask one more question and then let you go on. But what was the stated reason that Alderman Baumann placed a hold on Six Star's application for a theater license? That's not in the record, Your Honor. It was simply held. Objectively, though, there were two factors that I think are in the record that I think the court can consider. Number one, Rusty's was a tavern that is discussed in the district court's opinion that had just recently gotten a liquor license at that same location, and the fact that the process, excuse me, the ordinance was subject to repeal. So I want to go back to Judge Shaw's question and your standing point. You would agree, would you not, that under the Supreme Court's Clapper decision, an allegation of future injury is sufficient for standing if the threatened harm is impending or there's a substantial risk that the harm will occur? Absolutely. We don't argue with that point at all, Your Honor. No, I mean, wise, because that's what the Supreme Court said in Clapper. And also that someone can establish standing by alleging an intention to engage in a course of conduct that's affected with a constitutional interest, but it's proscribed by a statute and there's a credible threat of prosecution, right? Correct. So we have those rules in an upfront sense and we have the jury's verdict, with hindsight at least, seeing that there was, in fact, injury from the chilling effect of these ordinances, which deterred the opening of the establishment by feral. So why, given that standing is not supposed to be just a surrogate for the merits, why isn't that enough to assure that we do have a party with the necessary concrete adverseness, injury in fact, alleged causal connection, and so forth? Well, again, Your Honor, I would point to the extent of the course of litigation in this case. The cases that you've cited, when you're looking at the threat of future injury, when you're looking at prospective or present threat of prosecution, that, of course, would have given feral standing. However, at the time that this was going on, that is to say in 2011, the ordinance was subject to repeal. But no one knows. I mean, it's not over until it's over, right? And so you seem to be saying there's some zone within which it's okay to deprive somebody of First Amendment rights if you're promising soon to repeal the ordinance that's doing that. And I'm not familiar with any such rule. No, I guess let me take a step back, Your Honor. I think what I'm suggesting is that just the mere knowledge that a law may be unconstitutional does not cause an injury. And I cited in the brief the Petra Presbyterian Church versus the village of Northbrook, which is a case from this court, which suggests that, again, mere knowledge of the existence of an invalid law that might be applied to one is not an injury. And so in the context of this case, where feral was alleging that it had passed damages and had not done so, had not made that allegation earlier in the litigation until it was invited to do so, to a sponte by the district court in the first summary judgment motion. What was wrong with that? You mentioned a lot the fact that that's how this came up. Do you think the district court was acting beyond the scope of its authority in interpreting the allegation as actually, by that time, an as-applied damages allegation? I think so. I think that at the stage of summary judgment is that point in time in litigation where it's the put-up-or-shut-up moment, as defined by this court, where the plaintiffs brought forth their evidence, the evidence was considered by the district court, and rather than deciding the issue, which is the necessary requirement for that stage of the litigation, an inquiry or this case took a curve, if you will. And what happened then is feral was invited to submit further evidence to which, I guess, ultimately the district court decided that it was concrete and particularized enough that would warrant standing. Again, I would direct this court's attention, because you do review the summary judgment decision de novo, to look again at the allegations that were made in support of the motion for summary judgment, whereas feral just simply said, but for the existence of these two ordinances, we would have opened a dry gentleman's club. What are the salient differences between the former and current ordinances? Is the addition of a time frame for the city to issue the primary change to the licensing process under the replacement public entertainment premises ordinances? That is one major aspect. The city, during this litigation, acknowledged that the former theater and the former public entertainment club licenses did not have time limits for a decision to be made, and that was not litigated by the parties because the city conceded that the former ordinances did not have such a time limit. The current ordinance does have that time limit, among other substantive changes. And before the current lawsuit, had the theater or public entertainment club ordinance has been declared unconstitutional, as applied to any other entities? I am not aware of any. I know that plaintiffs, in their reply brief, I believe cited a district court opinion that was a party, but I don't think that was decided on the merits, but I wasn't the lawyer in that case, so forgive me. I don't know. I just want to come back to your concern about the district court's recharacterization and ask you how you can justify this concern in light of Rule 56F, which actually, after notice and a reasonable opportunity to respond, allows the court to grant summary judgment even on grounds not raised by a party, to decide summary judgment on its own. The judge wasn't doing anything precipitous. The judge invited supplemental filings from the parties, and it seems to me this is precisely the sort of action that 56F allows. The city's not stating and arguing that the district court made a mistake in bringing this up. I thought you just said you were, so maybe we need to be clear about this. Thank you, Your Honor. What I meant to say was that the district court simply was wrong in deciding that there was sufficient evidence put forth, a concrete particularized evidence showing that Farrell had suffered an injury. So you're not disputing the district judge's ability to say there was an as-applied challenge inherent in the complaint? Your issue is just with whether the evidence was sufficient at summary judgment. I believe so, Your Honor. What I'm saying is that the as-applied, that the district court was incorrect in asserting that Farrell had as-applied standing because, in our view, because Farrell never applied for a license or had the licenses or ordinances enforced against it, that therefore it was not applied. And that the simple effort of self-censorship does not warrant a finding that there was as-applied standing in the case. And to the point made earlier, those other cases that do allow for self-censorship and threat of injury are, again, all prospective looking. You're not, this case is unusual because we're looking back in time. Why does that, I mean you make, I mean I was struck by that too in this case, but I don't see why that's a constitutional problem. Prospective market entry is a theory that appears in a number of different areas of the law. It happens in antitrust cases where somebody says, an exclusionary act kept me out of this market. It happens in other areas. And it's a big burden for a plaintiff to carry to show that things were specific enough and that it's not you just talking, that you were going to enter a market. But it's something that's capable of proof, and this jury found it. So I don't understand why prospective market entry fails to confer standing. Well, I think that the evidence that was put forth both at the summary judgment stage, which is what is at issue in this appeal, was insufficient. And I did, in our brief in chief, did point out to this court the testimony that was elicited by the main principle of Farrell at trial, which largely mimicked the declaration that was filed in support of their motion for summary judgment. So, and that was not to say because the city, I guess, is choosing not to go down the road of appealing the jury verdict, but rather simply saying looking at the universe of information that's here, they're simply just not standing. Right. Remind me, did you make a Rule 59 motion to set this verdict aside for insufficiency of evidence? No, Your Honor. All right, you can continue. Thank you. I'm wondering why it would make any difference what Farrell's motivation was if it's able to prove it suffered actual harm as a result of a statute that's unconstitutional. I'm sorry, could you repeat the beginning part of your question? Yeah. Why does it make any effort, why would it make any difference what Farrell's motivation was if it is able to prove it suffered actual harm as a result of an unconstitutional statute? Well, I think in the particulars of this case, Farrell simply said, we would have done something, we would have opened a dry gentleman's club, but for the existence of these ordinances. Of course, until they made that declaration for the first time some year, over a year after the litigation began, they had never made that kind of allegation in earlier complaints. The problem is that just until it was invited to do so. And from the city's perspective, the harm here is that there are unfortunately sometimes antiquated ordinances that are on the books. And with this kind of a decision here, any party could theoretically just assert that they chose not to do something because of a fear that they felt in the past, and therefore can receive lost profit or compensatory damages. But of course here the jury made a factual finding that Farrell would have, you know, opened a dry gentleman's club. And that factual finding connects Farrell's injury to the existence of the city's ordinance, doesn't it? Why wouldn't that be enough to confer standing? Well, because I thought that it should have never gone that far, Your Honor. And simply because at trial the city was forced to disprove a negative. Which, you know, obviously we're on this side of the room here after the jury decision. It was a difficult task. And you're unaccustomed. So I see my light is on. Did you have a question? Same point. Okay, you may save the rest for your rebuttal. Mr. Olson. May it please the Court, I'm Jeff Olson for Sixtar and Farrell. One major flaw in the city's argument is that it failed to recognize that there are different types of as-applied challenges. The city is focused on the type of as-applied challenge where an ordinance is applied or threatened to be applied to a person in an unconstitutional manner. Ours is a different kind of as-applied challenge where an ordinance covers a broad range of activities but is unconstitutional in its application only to some of those activities here. So, Mr. Olson, my big question for you is why would it have been so hard for Farrell simply to have applied for the theater or entertainment license, tavern entertainment or theater license, just to kind of put a marker down. Yes, we're really serious. We want to enter this market. And, you know, if the city had said no, then we would have had a very concrete piece of evidence that it was hoping to enter this dry club market, so to speak. And futility seems to me like something quite different from risking fines or other kinds of sanctions. They could have applied, but it would have been just to make the point, because nobody's ever going to get a license under these unconstitutional discretionary schemes. Well, you say that, but I just, I, the city makes an argument. Look, what's to prevent pretty much anybody from drifting along and saying, I was going to enter this market. Yes, you can have a jury trial. You can have the jury decide yes, you would have, no, you wouldn't. But that's a very expensive process, time-consuming and the like. And that's why we have these threshold requirements. So I'm just not clear why the simple act of throwing in an application for the license couldn't have been required. Well, we advised our clients that wasn't necessary, and it would have been a big burden. It's not just filing a paper application and getting a paper turned down. There's a public hearing, and if you want to do a serious job, you show up at the public hearing with your lawyers and from four to 24 witnesses, because that's how many you'll be facing from the other side, from community residents that come in to testify against you. And, you know, we had the black letter law that said you don't have to apply for a license to challenge a nonconstitutional ordinance, so we advised our clients we could go ahead with this litigation without making that application. When did you think you were making an as-applied challenge? Well, we alleged as-applied and facial challenges in every iteration of the complaint. It's right there in the first couple of paragraphs of the violations of law section of the very first complaint, alleging that the whole scheme for regulating adult clubs in Milwaukee is unconstitutional as-applied and on its face. But we argued facial unconstitutionality in our summary judgment submissions, and frankly that was because we hadn't looked as deeply into the broad applicability of the as-applied doctrine as we have now, and we've read Richard Fallon's article, and we've seen the cases that we've cited on our brief that explain that an as-applied challenge can be a challenge just to a subset of all of the potential applications of an ordinance. I have the same exact question, though, that Judge Wood has, and that is, what is to stop anyone from seeking money damages on the theory that he would have opened a profitable, expressive venue, but for an allegedly unconstitutional ordinance? What, you know, if you could help us with that. The very difficult burden that you have to carry at trial to show that you would have started this new business. Now, gentleman's clubs are not popular. Jurors don't come into a courtroom wanting to decide a case for a gentleman's club proprietor. They have to be pretty much boxed into a corner, and we did that by evidence that our client retained an architect to do architectural drawings and had a general contractor ready to go. Our client made field trips to other gentleman's clubs. Our client did a spreadsheet financial analysis of income and expense expectations for a dry club. Our client looked at other non-alcohol income-producing entertainment businesses. There was a long list of evidence we had to present. There was no real question left by the end of the day that John Ferraro, in his heart and in his daily life, was living his desire to open a dry club as soon as he could, and we alleged that in every iteration of the complaint. But if he wanted to open a dry gentleman's club at that West Pittsburgh Avenue location, why not open it and file suit against the city? I mean, that's what he did in Madison, right? That's right, and if it would have been just the zoning ordinance that was on the books from before 2009 to July of 2011, that's probably what we would have done. But with these public entertainment club ordinance and the theater ordinance and it being very uncertain what position the city was going to take about what ordinance is even applied, we didn't know that they were going to take the position that the theater ordinance applied until Mrs. Crandall talked to Stuart McCormell in the city attorney's office. We didn't know they were going to take the position that the public entertainment club ordinance was applicable until we filed against the theater licensing ordinance and they opposed our motion to amend by saying, no, it's the public entertainment club ordinance. So we would have been going into court in a very dicey situation had we opened, and they would have been risking per performance forfeitures of up to $2,000. That's a lot of money. Could I ask you, really going back to this idea of the damages remedy, the jury finds $435,500 in damages. What represented the starting point? The question they were asked is what amount of profit would they have earned before March 12, 2012? And that can't be from the beginning of time, obviously. Was it the statute of limitations? Was it concrete evidence? There was concrete evidence, and here it was. John Ferraro testified with all kinds of supporting evidence that he applied for liquor licenses and a tavern amusement license, which is the cabaret license, in the summer of 2010, and that if it wouldn't have been for these unconstitutional ordinances applicable to dry clubs, he would have opened that club one way or the other, whatever happened with his liquor license application in September of 2010. So he did actually apply for both of them in September 2010. He did not apply for dry club licenses. Not dry club, but he applied for a tavern plus amusement. Yes, and he testified if it wouldn't have been for these unconstitutional ordinances. But those are two separate applications, aren't they? So, I mean, I guess in 2010 he doesn't say, I want to move forward with the amusement license, whatever we call this thing. He doesn't say, I want to move forward with the amusement license without the tavern. Aren't they two separate applications? The tavern amusement license is a license you get if you already have a liquor license that allows you to present entertainment in a liquor licensed establishment. So those two licenses are joined at the hip, and they're the ones that you have to get both of to present nude entertainment in a liquor licensed establishment. The ones that were at issue in this case apply to non-alcohol selling clubs. They're the public entertainment club ordinance and the theater licensing ordinance. And if it had not been for the existence of those ordinances, Mr. Ferraro would have opened a dry club in September of 2010, as soon as his liquor license application and tavern amusement license application were denied by the city. So that's understood as the starting point. Yeah, and there was some wrestling at trial about whether he could have actually done it in September 2010 or whether the build-out would have taken a few months longer, and that may explain why the jury awarded only about half the damages that were testified to by our economic expert. But it was 18 months of operation at the most. You know, in the brief, Mr. Husson, the majority of cases that you cited dealing with avoiding prosecution involve pre-enforcement, facial changes to statutes or ordinances. Are you able to point to a case where the chilling effect alone of an allegedly unconstitutional ordinance was sufficient to confer standing for an as-applied challenge for monetary damages as opposed to injunctive or declarative relief? In Kramer v. City of Schofield, our clients made an application under one of the ordinances that we challenged, but they didn't make an application under the other one. We challenged multiple ordinances in that case, some without having applied, just based on chilling effect, and we got a summary judgment decision that cleared the way to a trial on damages, and that was settled just on the eve of a damages arbitration. But we were able to recover damages in that case based on an ordinance under which we hadn't applied, where the only injury was chilling effect. But, man, the authorities of this court are very strong on the idea that the chilling of protected speech may alone qualify as a cognizable Article III injury. That's in Center for Individual Freedom v. Madigan, and in Bell v. Keating, the court said, the existence of the statute constitutes the government's commitment to prosecute in accordance with it, and a concrete prospect of future harm to those who would flout it, and in American Civil Liberties Union v. Alvarez, the court talked about the existence of a statute implies a threat to prosecute. But I suppose the interesting thing about this case, I'm not aware of other cases in which damages were the remedy. The court typically is looking at enjoining something that is an unconstitutional ordinance, and perhaps there's no meaningful difference, but it opens up a whole new area of exposure, certainly, for municipalities, states, others who might have these things. I think there have been some damages cases. I think they've been mostly settled. And the ones that get to the Supreme Court, of course, are the social justice ones involving really pre-enforcement, usually brought by public interest organizations, to block the enforcement of some brand new statute before anybody's been actually subject to a concrete injury under it. So you think it makes a difference, the type of expressive activity being regulated here lies at the outer ambit of protected First Amendment activity? No, I don't. I think it's protected by the First Amendment, and I don't think we have second-class constitutional rights in this country. So, in other words, the inquiry would be the same if Ferrell had plans to make an unpopular political statement or something else closer to the core of protected First Amendment? We have to fight for the First Amendment in the burlesque clubs and gentlemen's bookstores, because if we don't fight there, we will be fighting in the libraries and the public schools tomorrow. Is the chilling effect from the statute being on the books different when the statute has been repealed, and the repeal is going to go into effect shortly? Well, it's interesting that the city says, although they didn't try to raise this at trial, and I think that even where the issue is standing, if standing comes down to a question of fact, like was there a threat of prosecution, I think the city has to raise that defense at trial, or it's gone. But they say the court should have inferred from the fact that we had set about to repeal these ordinances that we had no intent to prosecute. But really, they didn't repeal them effective immediately. They repealed them in November of 2011, effective in March of 2012, and the reason that they kept them on the books during that period was that they wanted something to be able to enforce against businesses covered by these licensure requirements during that interim period. They didn't just say, gully, we've got some unconstitutional ordinances, let's get them off the books. They kept them in force for that period of four or five months. So I think that if that supports any inference, it supports an inference that there was an intent to enforce. You know, in your fourth amendment complaint, you alleged that Buckford, the public entertainment club license ordinance, both plaintiffs would be offering erotic dance entertainment without liquor licenses, yet you later conceded that both Six Star and Feral would not have opened clubs without alcohol in such close proximity to one another. Well, what we should have said in the complaint was one or the other or both to leave our options open. And perhaps... So how do we factor what you actually did say in? Well, there's certainly an allegation in the complaint that Feral would have opened a dry club but for those ordinances, and that's the allegation that's behind the jury verdict in this case. If the court wants to say that, you know, because there was some over-exaggeration of the client's intentions in the pleadings or because they hadn't really looked hard at the economics of running two clubs in downtown Milwaukee when they drafted their complaint, I just don't think that's something the case should turn on. Thank you. Thank you. All right, thank you very much, Mr. Olson. Anything further, Mr. Stevens? Thank you, Your Honors. Just briefly, there is an issue in this case that's unique to the case, and I know the court doesn't care to hear too many of the facts, but please know that the record in this case shows that the overarching issue was the application and denial by the city of Milwaukee of both Feral and Six Star's liquor licenses and the necessary tavern amusement license that went along with those two. That is what the majority of the summary judgment briefs discussed. That was the majority of the district court summary judgment opinion. So that was the primary issue of the case, and in fact the district court said so, and that is inaccuracy. So with the focus being on those particular issues, the theater issue and the public entertainment issue did not come up until well into the litigation was ongoing, and inherent with the problem with the district court's observation in the first summary judgment decision, where the court said that as the record stood before him at the first blush, that Feral did not seem to have any standing regarding the theater and the public entertainment club ordinances because there was no information given to the district court. But the district court allowed Feral to supplement that, which was done so with the declaration, which then started this whole process and why we're here today. If we had focused on the main thrust of this case, which is what everyone was talking about for the beginning of the litigation, it was about the liquor licensing case. And as you recall... Well, they've given up on that. I'm sorry? The city prevailed on the liquor license. Absolutely. And I understand the case. They accept that. They're not pursuing any cross appeal at this point. Correct. They abandoned their cross appeal, and the district court acknowledged that at the time they were trying to overturn Blue Canary, which is a precedent of this court involving the city of Milwaukee as well. But the point and why that's important, though, is because in the context that this case came in then, it is only in the third and the fourth amended complaints that these plaintiffs started to allege that the theater and the public entertainment club licenses were a problem. As far as I know, this court asked counsel whether or not the as-applied and the facial challenges were made from the beginning, from the first complaint, and that is true, but it only had to do with the tavern and tavern amusement licenses and the zoning licenses at the time. The zoning issue went away because that, too, was repealed during the context of this litigation. So from a big-picture point of view here, Your Honors, what I'm trying to suggest is that the city was vigorously defending its tavern and tavern amusement licensing process, which... Did you object to the filing of these various amended complaints? It seems to me quite common for amended complaints to be submitted. Absolutely. The city opposed each and every one of them for a variety of substantive reasons. Right, but you were not successful in that. That is correct. From the big-picture point of view here, then, how the... We found ourselves in a jury trial regarding the theater and the public entertainment club license to which Farrell had never applied to or had not... between when the district court interjected this thought into the process and the date of the trial. Yes, and I think primarily because at that point there had been no discovery regarding damages, meaning the first summary judgment decision was based solely on liability. And then once the second... But my point is I understand that, but it's kind of ancient history. Now, you had plenty of time to do your discovery before the trial. Yes, we're not complaining about the discovery. Thank you, Your Honor. I see my time is up. All right. So thank you very much. Thanks to both counsel. We'll take the case under advisement.